[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on June 12, 1971 in Preston, Connecticut. There are no minor children issue of the marriage. Neither party has received financial assistance from the State of Connecticut. The marriage has broken down irretrievably and there is no prospect for reconciliation. The court dissolves the marriage on the grounds of irretrievable breakdown.
The plaintiff wife is 63 years of age. She is employed as a blackjack dealer, however, she is presently on medical leave because of recent hand surgery. She is expected to return to work in December 2002. When she works as a dealer, her average net weekly income is approximately $500. The plaintiff is also trained as a beautician and she operates a salon in Bozrah, from which she earns approximately $100 a week.
The plaintiff has accumulated retirement benefits from her employment in the amount of $1,000. Her affidavit indicates that she has liabilities of approximately $5,800.
The plaintiff enjoys casino gambling and buying scratch-off lottery tickets. The court believes this enjoyment borders on compulsion. From the evidence, the court is unable to determine how much the plaintiff has actually lost in these activities; however, she spent at least $61,000 at Foxwood's Casino between 1995 and 2001.
Without permission of the defendant, the plaintiff cashed and spent their joint tax refunds for 1999 and 2000, totaling $8,365. By stipulation dated July 2, 2001, the plaintiff agreed the defendant would receive a credit of $4,182 at the time of final judgment. The court finds the plaintiff is in arrears in payment of pendente lite orders to the defendant in the amount of $9,820.67 as of December 13, 2002. The plaintiff is not required to reimburse the defendant for a car he bought her which she no longer has. CT Page 16315
The defendant husband is 67 years of age. He operated a construction company during most of the marriage. He now receives Social Security benefits in the amount of $239 per week. In 1998 the defendant suffered a stroke. He has made a good recovery, although, he cannot drive and he has difficulty with short-term memory. His financial affairs are handled by his daughter.
The defendant has liabilities of $4,000. He has $500 in a checking account and owns miscellaneous equipment that he used in his former business which he values at $5,000. The defendant has collections of automobiles, coins and precious metal, and guns. The defendant has also sold items of personal property during the pendency of this action. These items will be addressed separately.
The court will accept the defendant's valuations of his automobiles which are as follows: 1998 Cadillac Catera, $10,000; Dodge Ram pick-up, $15,000; 1988 Pontiac Trans Am, $3,000; 1994 Chevrolet Cavalier, $5,000. Although not stated on his affidavit, the defendant also owns a 1968 Camaro valued at $4,500.
Since the commencement of this action, in violation of the automatic orders, the defendant has sold various items of personal property and utilized all of the proceeds. The court concludes these proceeds are part of the marital estate and they will be credited to the defendant's share in the assignment of property. The items sold and the amounts received by the defendant are as follows: a dump truck and trailer, $5,000; a screen plant, $5,000; a Pontiac Firebird, $4,000.
The plaintiff claims that the defendant had a valuable gun collection; however, she did not offer any credible testimony as to its value. The defendant testified he does own some guns which he believes are worth $800. In the absence of other evidence, the court will accept his value.
The plaintiff also claimed that the defendant has a collection of coins and precious metal bars which have a substantial value. Again, the plaintiff did not produce credible evidence as to the present content and value of the collection. The defendant admitted to collecting coins and some precious metal, but he claimed that a substantial portion of it is now missing. It is his claim that the plaintiff is involved in the disappearance of the collection. The court is not persuaded. The only credible evidence of the value of the collection comes from the plaintiff who testified that in May 2001, the coins and precious metal were worth no more than $4,000. The court will assign a value of $4,000 to the collection and will credit it to the defendant's share of the marital estate. CT Page 16316
The court must consider another item of personal property with substantial value. In June 1998, the defendant arranged for the purchase of a new John Deere backhoe/loader that cost $86,077. To purchase this piece of equipment, the defendant traded in a used backhoe and paid the balance due, $64,077, in cash. At the time of this purchase the defendant owed back taxes to the IRS. To conceal his ownership of this asset from the IRS, the defendant put the backhoe/loader in his daughter's name. The backhoe/loader is located at the defendant's home and he uses it exclusively. The court finds that the daughter is a constructive trustee of the backhoe/loader for the benefit of the defendant. The defendant utilized $86,000 of the marital estate to consummate this deceptive transaction. This transaction is an appropriate circumstance for the court to consider in resolving this marital dispute. See Porter v.Porter, 61 Conn. App. 791 (2001).
In 1987 the defendant purchased property located at 396 Salem Turnpike in Bozrah. This property was subsequently transferred to the plaintiff when the defendant filed bankruptcy. This property has a house, which is presently unoccupied, and the plaintiffs beauty shop. When the plaintiff acquired this property in May 1994, both parties understood it would be encumbered by a mortgage in the amount of $63,000. Subsequently, without the defendant's knowledge, the plaintiff refinanced this mortgage several times and increased the first mortgage debt encumbering the property. In March of 2000, the first mortgage, then having a balance of $108,200, was paid off with the proceeds of a refinance of the defendant's property located at 154 Noble Hill, Montville. This increase in the mortgage debt, $45,200, was for the plaintiffs sole benefit. The plaintiff, without the defendant's knowledge, also encumbered the Bozrah property with a mortgage to Beneficial Finance and a judgment lien, which will be discussed later. These two encumbrances were also paid off with the proceeds of the refinance of the Montville property. The 396 Salem Turnpike, Bozrah, property is now in the defendant's name and the parties agree it has a value of $349,000. The only encumbrance now on this property is a lien for back property taxes in the amount of $12,000, consequently it has equity of $337,000.
The defendant presently resides at 154 Noble Hill Road, Montville. This is the marital home and the plaintiff resided there until she left last year. This conventional raised ranch, which was added to during the marriage, now has two barns, five bedrooms, four baths, two non-permitted apartments, and an inadequately ventilated, attached, indoor swimming pool. The house is situated on six acres; access to it is over a right of way. The property has, as an appurtenance, a permanent easement to use an adjoining one acre parcel. CT Page 16317
The plaintiff, on her financial affidavit, values the house property at $300,000 and the easement at $40,000. The defendant, on his affidavit, values all the property at $250,000. Because neither party submitted appraisals of this unusual property, the court ordered James Blair to appraise it. The appraisal was admitted and Mr. Blair testified. He found the fee property had a value of $185,000 and the easement had a value of $5,000. The property value included a functional depreciation deduction of $75,000. This deduction reflected the poor condition of the property, the junk-littered grounds, as well as the unusual features of the house. The court finds the defendant is responsible for most of this functional depreciation. Considering all the evidence regarding value, the court declines to fully adopt Mr. Blair's valuation. The court finds the value of this house property and easement property to be $275,000. It is encumbered by a mortgage having a balance of $222,712 and back taxes of approximately $12,000, resulting in equity of approximately $40,000.
The March 2000, mortgage upon the Montville property had an original balance of $224,000. Part of the mortgage proceeds, $64,482, was used to pay off existing mortgages on the property. The following amounts were paid to release the encumbrances on the Bozrah property; $108,200 for the first mortgage, $23,000 for the Beneficial Finance mortgage, and $1,432 for the judgment lien. The remaining proceeds, after expenses and fees, were utilized by the defendant.
Both parties blame the other for the breakdown of the marriage. The court finds they are equally responsible for the breakdown.
Neither party requests alimony and the court finds that it is not appropriate for either party to receive alimony.
The court has considered the provisions of General Statutes § 46b-81
when formulating orders assigning the marital estate. The parties have been married for more than thirty years and they have accumulated substantial assets. The court concludes the marital estate should be divided equally. In this case, however, it is necessary to consider property previously utilized by one party and debt created for the sole benefit of one party.
Fortunately, there are two parcels of real estate to distribute. It is appropriate for the plaintiff to receive the Bozrah property. This is the location of her business and the house on the property could provide her a residence. She should also retain her retirement accounts of $1,000. The equity in the Bozrah property and the retirement accounts total $338,000. CT Page 16318
The defendant should retain the Montville property and its equity of $40,000. The defendant should also retain his $500 checking account, his automobile collection valued at $37,500, his business personal property valued at $5000, his guns valued at $800 and his coins valued at $4,000. The defendant is allowed the proceeds from the sale of the equipment and the Firebird, totaling $14,000. The defendant is also allowed the $86,000 he appropriated from the marital estate to purchase the backhoe/loader. These assignments and allowances total $187,800.
The total amount of the marital estate allocated is $525,800, thus, an equal division requires each party receive $262,900. To equalize the shares, the plaintiff will transfer to the defendant the sum of $75,100.
A portion of equity in the Montville property, which is a marital asset, was consumed by debt which benefitted only the plaintiff to wit, $45,200 increase in first mortgage indebtedness, $23,000 for the Beneficial mortgage, and $1,432 for the plaintiff's judgment lien. The total of the plaintiffs debt included in the defendant's mortgage is $69,632. It is equitable for the plaintiff to reimburse the defendant for his share of this lost equity by way of an additional payment to him of $35,000.
The plaintiff testified she had the ability to obtain an asset-based mortgage upon the Bozrah property so as to comply with the court's orders. If she cannot obtain the funds to comply with the orders, the Bozrah property will have to be sold. The net proceeds from the sale of the Bozrah property may increase or decrease the size of the marital estate. The court has provided for a possible sale, and the method for equalizing the parties' share of the marital estate, in its orders.
 Orders:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. Neither party is to receive alimony.
3. The plaintiff is to pay to the defendant the sum of $9,820.67, pendente lite order arrearage, within 60 days of the date of judgment, or upon sale of 396 Salem Turnpike, Bozrah as provided for below.
4. The plaintiff is to pay to the defendant the sum of $4,182, reimbursement for the tax refunds, within 60 days of the date of judgment, or upon sale of 396 Salem Turnpike, Bozrah as provided for below. CT Page 16319
5. The defendant is to retain the premises located at 154 Noble Hill Road, Montville, Connecticut.
6. The defendant shall transfer to the plaintiff the premises known as 396 Salem Turnpike, Bozrah, within 60 days of the date of judgment. Contemporaneous with the transfer, the plaintiff shall pay to the defendant the sum of $75,100 to equalize their shares of the marital estate, and the further sum of $35,000 for the defendant's lost equity. If not previously paid, contemporaneous with the transfer, the plaintiff is to also pay to the defendant the tax refund reimbursement of $4,182 and the pendente lite arrearage of $9,820.67 ordered herein.
7. In the event the plaintiff is unable to tender the amounts due the defendant as ordered herein, the defendant, no earlier than 60 days and no later than 75 days of the date of judgment, shall list the property located at 396 Salem Turnpike, Bozrah, for sale at a listing price agreed to by the parties. Upon the sale of 396 Salem Turnpike, Bozrah, the net proceeds, after paying commissions, taxes, and other customary expenses of sale, shall be distributed using the formula in paragraph 7a. The court retains jurisdiction over matters pertaining to the transfer and/or sale of 396 Salem Turnpike, Bozrah.
7a. The amount of net proceeds shall be added to $189,000, which amount represents the value of the estate assigned to the defendant, $188,000, combined with the value of the estate assigned to the plaintiff, $1,000. The sum total of $189,000 and the amount of the net proceeds shall be divided by two resulting in the dollar amount of equal shares of the total marital estate. From the proceeds of sale, an amount equal to the difference between $188,000, and the amount of an equal share of the marital estate, shall be paid to the defendant. This payment is in lieu of the $75,100 adjustment payment contained in paragraph 6. The balance of the sale proceeds shall be distributed to the plaintiff subject to her obligation to make immediate payment to the defendant of the other amounts ordered herein; specifically, $35,000 mortgage contribution, $4,182 tax refund reimbursement and $9,820.67 pendente lite arrearage.
8. The plaintiff shall retain her Dime Savings checking accounts and her Mohegan Sun 401K and retirement plan.
9. The defendant shall retain the personal property shown on his financial affidavit. He shall also retain his gun collection and his coin collection and the 1968 Camaro. He shall also retain his interest in the John Deere backhoe/loader. CT Page 16320
10. Each party shall be responsible for the liabilities shown on their respective financial affidavits and shall hold the other party harmless therefrom.
11. The plaintiff is to retain the personal property and beauty salon fixtures located at the Bozrah location.
12. The following items of personal property are assigned to the plaintiff and the defendant shall make them available for pickup by the plaintiff within 30 days: the antique dining room set, antique doll carriage, photo albums from plaintiffs bedroom and pictures of her son and daughters located in the dining room, the large safe, washer and dryer in laundry room; dresser, chest, night stand, television in plaintiff's bedroom, guitar belonging to her deceased brother, antique mantel and fireplace, recipe file in kitchen, Christmas decorations, her personal objects in the attic, half of the cooking utensils, the blue golfcart, the Murray riding lawn mower.
13. The defendant is to return the plaintiff's .25 caliber handgun to the plaintiff if it is in his possession. If it is not in his possession, he shall cooperate in the transfer of any papers necessary to establish ownership by the plaintiff.
14. Each party is responsible for their own counsel fees.
___________________ Domnarski, J. CT Page 16321